**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

TRIANGLE EXPERIENCE GROUP, INC., :
                                 :
       Plaintiff,              :
                                   :
v.                                       :
                                   :       Case Number 1:23-cv-01797-MSN-LRV
MAX MINDS, LLC,             :
                                   :
       Defendant.            :

**PLAINTIFF TRIANGLE EXPERIENCE GROUP, INC.'S**
**BRIEF IN OPPOSITION TO THE MOTION TO DISMISS, OR ALTERNATIVELY,**
**TO TRANSFER VENUE FILED BY DEFENDANT MAX MINDS, LLC**

Richard D. Kelley, Esq., VSB No. 44228
Raighne C. Delaney, Esq., VSB No. 38787
Stephen D. Caruso, Esq., VSB No. 87376
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
(703) 525-4000
(703) 525-2207 (Fax)
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
*Counsel for Triangle Experience Group, Inc.*

Plaintiff Triangle Experience Group, Inc. ("TEG"), by counsel, and pursuant to Local Civil Rule 7(F) and Federal Rules 12(b)(2) and 12(b)(3), hereby opposes the Motion to Dismiss, or Alternatively, to Transfer Venue (the "Motion") (Dkt. No. 12) filed by Defendant Max Minds, LLC ("Max Minds") in response to the Complaint. For the reasons stated herein and at oral argument on the matter, the Motion should be denied.

## Introduction

TEG sued Max Minds for various claims arising out of the Joint Venture Agreement ("JVA"). Max Minds and TEG, a Virginia corporation, formed a partnership and executed the JVA in Virginia. The purpose of the JVA was to develop, market, and sell software to government customers. Max Minds breached its contractual obligations in several material respects causing TEG millions of dollars in damages and abruptly interfering with an invaluable service to the United States.

Max Minds filed its Motion to delay the inevitable and avoid having to answer for its wrongs in this Court. The grounds in support of Max Minds' Motion are unpersuasive and legally deficient. Max Minds is plainly subject to personal jurisdiction in Virginia and venue is proper.

Max Minds (i) solicited TEG as a partner in the federal contracting space, (ii) undertook efforts to solicit and secure the partnership in Virginia, (iii) formed a partnership in Virginia with a Virginia corporation, (iv) executed the JVA in Virginia, (v) developed software that was installed in a TEG data center in Virginia, (vi) transmitted software to Virginia knowing that it would be marketed and sold to end customers from Virginia, (vii) constantly communicated with TEG in Virginia throughout the formation and performance of the JVA, (viii) received no less than $5,000,000 in revenue from a Virginia corporation in furtherance of a Virginia partnership, and (ix) ultimately caused harm in Virginia stemming from its breach of the JVA.

2

At bottom, Max Minds purposely availed itself of the privilege of conducting business in Virginia. The controlling factors regarding personal jurisdiction support TEG's position and the Motion should be denied.

### Factual Background Regarding Jurisdiction

TEG is a Virginia corporation with a principal place of business in Virginia. TEG specializes in providing services to the federal government, such as an operating system known as C4MAP. *See e.g.,* Compl. ¶¶ 4, 9-18; *see also* Declaration of Robert E. Clare, Jr., ¶¶ 2-3, attached as Exhibit 1.

Mr. Brandon Fischer is the founder and owner of Max Minds. Before Max Minds, Mr. Fischer worked as a software developer at Prysm, Inc., an entity providing IT services to the United States government, which is headquartered in Reston, Virginia. (Ex. 1, ¶ 4.) During his time as an employee of Prysm, Mr. Fischer attended TEG presentations (in Virginia), during which time Mr. Fischer became impressed with TEG's technology and mission. (*Id.*) Ultimately, Mr. Fischer inquired with TEG about forming a partnership, pursuant to which Mr. Fischer, through his company Max Minds, would provide source code and software to power TEG's operating system. (*Id.*) Because Mr. Fischer was still under a non-compete agreement with Prysm, the partnership was not yet formed. (*Id.*)

Mr. Fischer again contacted TEG after the expiration of the non-compete with Prysm. (*Id.* ¶ 5.) At this point, Mr. Fischer was inquiring on behalf of his company – Max Minds. Specifically, Mr. Fischer wrote to TEG on July 2, 2019, stating that he would "love" for TEG "to be [its] partner." (*Id.*) In furtherance of Max Minds' request, on July 17, 2019, TEG and Max Minds entered into a non-disclosure agreement ("NDA") to permit TEG and Max Minds to freely exchange information regarding a potential partnership. (*Id.* ¶ 6.)

3

After the NDA was signed, Max Minds attended the TEG lab in Suffolk, Virginia and TEG demonstrated certain products and capabilities related to the potential partnership. (*Id.* ¶ 7). From July, 2019 through November, 2019, Max Minds and TEG continued to communicate regarding the potential software – now called "Haptic-Beta" – which Max Minds would develop and provide to TEG to install, maintain, market and sell. (*Id.* ¶ 8.) On November 5, 2019, Mr. Fischer met with TEG in Chantilly, Virginia to further discuss Haptic-Beta and the partnership. (*Id.* ¶ 9.) During the meeting in Chantilly, TEG and Max Minds established the general parameters, strategy, and goals for the partnership. (*Id.*; *see also* Declaration of Jeff Mase, attached as Exhibit 2, ¶ 4.)

On January 15, 2020, Mr. Fischer e-mailed Mr. Clare and informed TEG that Mr. Fischer was "tentatively planning to fly into Richmond" to "install Haptic-Beta at TEG's Data Center." (Ex. 1, ¶ 10.)  Mr. Fischer explained that Max Minds would then perform "testing, training and discuss use cases in depth." (*Id.*) Mr. Fischer asked TEG who would have responsibility for the travel expenses. (*Id.*) Mr. Fischer stated that "[a]s far as I am concerned, it is the cost of doing business and so I am ok with MAX covering this trip if necessary…however, Rob suggested that any travel related to TEG's current contract could be covered . . . so I thought I would ask." (*Id.*) TEG, wishing to start the partnership off on the right foot, agreed to reimburse the travel expenses, but stated that such an arrangement would not be sustainable moving forward. Max Minds then traveled to Virginia and installed software in the TEG Data Center. (*Id.*) The installation was performed by a Max Minds employee, Robert Schuster. (*Id.*)

On January 23, 2020, Mr. Fischer signed the JVA while he was in Mr. Clare's house in Ashland, Virginia. (*Id.* ¶ 11.) Mr. Clare signed the JVA the same day. Thus, the JVA was formed in Virginia.

During the formation and performance of the JVA, TEG and Max Minds communicated at least two times a week. (Ex. 2, ¶ 7.) Each and every time that TEG and Max Minds communicated, TEG was represented by Mr. Jeff Mase on the phone or video call. Mr. Mase was located in Virginia during each phone or video call. (*Id.*) Thus, Max Minds communicated with TEG in Virginia approximately 150 times about the performance of the JVA. Further, TEG paid Max Minds approximately $5,000,000 under the JVA – with every dollar coming from TEG's bank account in Virginia. (Ex. 1, ¶ 12.)

## Legal Standard

### a. Personal Jurisdiction

"Determining whether a person is subject to personal jurisdiction requires a two-step analysis. First, a court must conclude that jurisdiction is authorized by the state's long-arm statute." *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645, 652 (E.D. Va. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)). "Second, the court must find that the exercise of personal jurisdiction is consistent with the constitutional requirements of the Due Process Clause of the Fourteenth Amendment." *Id.*; *see also dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023) (citing *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014)).

"Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment." *Id.* (citing *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002)). "Accordingly, 'because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the Due Process Clause, the statutory inquiry merges with the constitutional inquiry.'" *Id.* (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)).

To be subject to personal jurisdiction, "a defendant must have certain minimum contracts … such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Selke*, 261 F.Supp.3d at 653 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Such 'minimum contacts' exist if a defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of a 'random,' 'fortuitous,' or 'attenuated' contacts.'")).

"In the Fourth Circuit, courts consider three factors when analyzing personal jurisdiction over a nonresident defendant: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities, and (3) whether the assertion of personal jurisdiction is constitutionally reasonable.'" *Id.* (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301-02 (4th Cir. 2012)).

If a defendant has a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. *Id.* at 654. A non-exhaustive list of factors relating to a "substantial connection" includes: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the

business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Id.* (citing *Consulting Eng'rs*, 561 F.3d at 278).

The plaintiff bears the burden of demonstrating jurisdiction. *See Mylan Labs, Inc. v. Akzo. N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). In the absence of an evidentiary hearing, the court assumes the credibility of the plaintiff's version of the facts and construes any conflicting facts in the affidavits or declarations in the light most favorable to the plaintiff. *Universal Leather, LLC*, 773 F.3d at 560 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (stating that absent an evidentiary hearing, the district court "must take all disputed facts and reasonable inferences in favor of the plaintiff" in determining whether the plaintiff has met its initial burden of proof with regard to personal jurisdiction) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176-77 (7th Cir. 1971) (accepting as true, for purposes of appeal, facts related in the plaintiff's affidavits and complaint when the parties' affidavits contained contradictory factual allegations with respect to personal jurisdiction); *cf. Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307-08 (4th Cir. 1986) (noting that the plaintiff "need not present evidence in making a prima facie case to oppose a motion to dismiss," and that "[m]ere allegations are sufficient" to satisfy the pleading requirements for personal jurisdiction).

**b. Venue**

A civil action may be brought in any judicial district (1) in which the defendant "resides" – which includes any judicial district in which the defendant is subject to the court's personal jurisdiction – or (2) in any district "in which a substantial part of the events or omissions giving

rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. §§ 1391(b)(1)-(2) and (c)(2).

"[I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citations omitted). "Rather, it should review the entire sequence of events underlying the claim." *Id.* (cleaned up).

A "substantial part" does not necessarily mean that a majority of the events must have taken place in the given district, and the chosen venue need not be the "best venue." *Walker v. Brooks Pub. Safety LLC*, 2023 U.S. Dist. LEXIS 223716, at *14 (W.D. Va. Dec. 15, 2023). It is possible for venue to be proper in more than one judicial district. *Mitrano*, 377 F.3d at 405; *see also Wachovia Bank v. Hudec*, 2008 U.S. Dist. LEXIS 134443, at *10 (E.D. Va. July 28, 2008) ("The Eastern District of Virginia would not be disqualified from hearing this claim even if it were shown that the activities that occurred in Maryland or Florida were more substantial than the activities that occurred in Virginia.").

To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue, and the "Court must draw all inferences in favor of the plaintiff." *Mitrano*, 377 F.3d at 405; *T. & B. Equip. Co. v. RI, Inc.*, 2015 U.S. Dist. LEXIS 111869, at *5 (E.D. Va. Aug. 24, 2015). Rule 12(b)(3) allows dismissal only when venue is "wrong" or "improper." *JTH Tax, LLC v. Younan*, 2023 U.S. Dist. LEXIS 155639, *4 (E.D. Va. Sept. 1, 2023) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 50 (2013)). Whether venue is "wrong" or "improper" depends exclusively on whether

the court in which the case was brought satisfies the requirements of federal venue laws. *Id.* (referencing 28 U.S.C. § 1391).

### c. Inconvenient Forum

Section 1404(a) permits a district court to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of demonstrating that transfer is proper. *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002).

To make that determination, the Court considers "(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. Apr. 2, 2007). As to the first factor, "a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d. 627, 630 (E.D. Va. 2003). As to the second factor, the court may consider (1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice." *JTH Tax, Inc.,* 482 F. Supp. 2d at 736.

### Argument

The Motion should be denied. Under well-established legal principles, Max Minds is subject to personal jurisdiction in Virginia. Max Minds plainly availed itself of Virginia by forming a partnership with a Virginia corporation, traveling to Virginia, negotiating and executing the JVA in Virginia, deriving substantial revenue from Virginia, and constantly communicating with TEG in Virginia. For similar reasons, venue is also proper in this Court.

## I.   THIS COURT HAS PERSONAL JURISDICTION OVER MAX MINDS.

Max Minds unquestionably has sufficient minimum contacts with Virginia to establish personal jurisdiction. Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the test focuses solely on whether the exercise of personal jurisdiction is "consonant with the strictures of due process." *Tire Eng'g*, 682 F.3d at 301-02. In the Fourth Circuit, courts consider three factors when analyzing personal jurisdiction over a nonresident defendant: the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; whether the plaintiffs' claims arise out of those activities; and whether the assertion of personal jurisdiction is constitutionally reasonable. *Id.* All three factors weigh in favor of exercising personal jurisdiction.

### a.   Max Minds Purposefully Availed Itself of Conducting Activities in Virginia.

Mr. Fischer began soliciting a partnership with TEG as early as 2018 while he was working for Prysm – a Reston, Virginia corporation. After Mr. Fischer's non-compete agreement with Prysm expired, Mr. Fischer again reached out to TEG – this time through his company, Max Minds. Mr. Fischer wrote to TEG on July 2, 2019 stating that he would "love" to partner with TEG. Max Minds and TEG then entered into an NDA in Virginia. Shortly thereafter, in July 2019, Max Minds then visited Virginia to collaborate with TEG in a demonstration lab in Suffolk, Virginia.

TEG and Max Minds continued to discuss a partnership from July 2019 – November 2019. On November 5, 2019, the parties met in Chantilly, Virginia. Mr. Fischer attended this meeting. During the November meeting, TEG and Max Minds developed their general plan and strategy for partnership and formed general terms to the forthcoming agreement.

On January 15, 2020, Mr. Fischer e-mailed TEG informing TEG that he was, again, traveling to Virginia and sought a meeting with TEG. During this trip, Mr. Fischer and Max Minds installed Haptic Federal in the TEG Data Center in Ashland, Virginia. The installation was performed by a Max Minds employee – Robert Schuster. After the installation at the Data Center, Mr. Fischer went to Mr. Clare's house in Ashland, Virginia. On January 23, 2020, *at Mr. Clare's house*, Mr. Fischer and Mr. Clare executed the JVA on behalf of their respective companies.

Thus, Max Minds met with TEG no less than three times leading up to the formation and execution of the JVA: (i) July meeting in Suffolk, Virginia, (ii) November meeting in Chantilly, Virginia, and (iii) January meeting in Ashland, Virginia.

After the JVA was signed, Max Minds and TEG would have meetings regarding the performance under the JVA at least two times a week. Each meeting included a TEG employee located in Virginia.

After the JVA was signed, TEG would market the Haptic Federal product to government customers. The sales under the JVA were pursuant to certain "Purchase Orders," between the government and TEG. To market the product and obtain a Purchase Order, TEG would demonstrate Haptic capabilities using the same software that was uploaded by Max Minds on the TEG Data Center in Ashland, Virginia. TEG would then sell the government the product and receive payment. TEG would then send 50% of the revenue from the sale of the Purchase Order to Max Minds. The payment came from TEG's bank in Virginia. In total, TEG paid Max Minds nearly $5,000,000.

In light of the foregoing, Max Minds developed and maintained a "substantial connection" to Virginia. *See Tire Eng'g*, 682 F.3d at 302 ("We have found purposeful availment where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an

integral element of the dispute.") (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285 (4th Cir. 2009)); *Selke*, 261 F. Supp. 3d at 655 ("Although Germanwings has no physical presence in Virginia, its ticketing arrangements with United and express authorization of United selling its services to Virginia citizens reflects sufficient purposeful availment of the forum to justify the assertion of personal jurisdiction"); *Div. Access Control, Inc. v. Landrum*, 2007 U.S. Dist. LEXIS 31133 (E.D. Va. Apr. 26, 2007) (exercising personal jurisdiction in Virginia when "[defendant] even saw fit to travel to Richmond in order to sign the very contract that created the relationship which is the basis for this dispute"); *Cambata Aviation, Inc. v. Kan. City Aviation Ctr., Inc.*, 2001 U.S. Dist. LEXIS 17305 (W.D. Va. Oct. 22, 2001) ("Given the extent of KCAC's purposeful contacts with these two Virginia businesses and the fact that their contract, signed in Virginia, did not contain a forum selection clause or a choice of law clause, KCAC could 'reasonably anticipate being haled into court' in Virginia.").

The simple fact that Max Minds is an Indiana company without an office in Virginia is of no moment. Max Minds reached into Virginia, solicited a partnership from TEG, met with TEG three times in person in Virginia, signed the JVA in Virginia, transferred and installed product to the TEG Data Center in Virginia, and collected large revenues from Virginia. Such facts support the finding of personal jurisdiction. *See Selke*, 261 F.Supp.3d at 652-53; *Tire Eng'g*, 682 F.3d at 302-303; *cf. Consulting Eng'rs*, 561 F.3d at 278 (finding no personal jurisdiction when only in-person meeting occurred in India; defendants signed agreements in India/Colorado; and defendants never traveled to Virginia).

Notwithstanding the overwhelming jurisdictional facts, Virginia is a "single act" jurisdiction, meaning that only one act may properly give rise to personal jurisdiction in Virginia. *Brainware, Inc. v. Scan-Optics, Ltd.*, 2012 U.S. Dist. LEXIS 77337, *25, 2012 WL 1999549 (E.D.

Va. 2012) (cleaned up); *see also Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.,* 92 F. Supp. 3d 435, 443 (E.D. Va. 2015) (initiation of the business relationship and in-person contact regarding the business relationship in the forum state are important to the jurisdictional analysis). For example, the simple fact that Max Minds came to Virginia to install software in the TEG Data Center or executed the JVA in Virginia is sufficient, without more, to establish personal jurisdiction. For all of these reasons, Max Minds has sufficient minimum contacts with Virginia to warrant this Court's personal jurisdiction over Max Minds.

**b. TEG's Claims Arise Out of the JVA and Max Minds' Activities in Virginia.**

Max Minds' actions giving rise to personal jurisdiction relate to the negotiation, formation, and performance (and breach) under the JVA. TEG's claims in the Complaint arise exclusively out of Max Minds' breach of the JVA and the obligations contained therein. (*See generally* Compl.) Accordingly, there is no question that TEG's claims arise out of the same conduct and activity which serves as the basis for the Court to exercise personal jurisdiction over Max Minds. *See Tire Eng'g & Distrib., LLC,* 682 F.3d at 303 ("A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim."); *Selke,* 261 F.Supp.3d at 657 (finding that defendant's acts of authorizing another party to sell its tickets to Virginia citizens was the "genesis of the dispute" and the plaintiff's claim arose from such); *Brainware, Inc.,* 2012 U.S. Dist. LEXIS at *28-29 ("The requirement for jurisdictional purposes is flexible — the Contract must merely 'arise out of or relate to' [defendant's] contacts with Virginia.").

### c. The Court's Exercise of Personal Jurisdiction is Constitutionally Reasonable.

This prong of the analysis "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Tire Eng'g*, 682 F.3d at 303. "The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide our inquiry." *Id.* Virginia maintains a "substantial interest" in resolving grievances of its businesses, and "[a] corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome." *Id.*

Max Minds is not "shielded from civil liability in Virginia because it is headquartered in [Indiana]." *CFA Inst.*, 551 F.3d at 296; *see also Tire Eng'g*. 682 F.3d at 304-05. Max Minds repeatedly traveled to Virginia to establish a business venture with TEG, executed the JVA in Virginia, with a Virginia corporation, consistently reached into the Commonwealth to transact business with it, and Virginia plainly has a substantial interest in resolving this dispute. *Id.* This Court's exercise of jurisdiction is constitutionally reasonable.

## II.    VENUE IS PROPER IN THIS COURT.

Venue in this Court is proper because (1) Max Minds is subject to this Court's personal jurisdiction; and (2) a substantial part of the events giving rise to TEG's claim arose in this judicial district. *See* 28 U.S.C. § 1391(b)(1), (2). TEG "need only make a *prima facie* showing of venue" and Max Minds has failed to overcome its burden to demonstrate that "venue is appropriate and necessary in another venue." *Mitrano*, 377 F.3d at 405; *Uretek USA, Inc. v. Applied Polymerics, Inc.*, 2011 U.S. Dist. LEXIS 139349, at *9 (E.D. Va. Dec. 5, 2011).

First, because the Court should find that Max Minds is subject to this Court's personal jurisdiction, venue is proper pursuant to 28 U.S.C. § 1391(b)(1). This is because a civil action may be brought in "a judicial district in which any defendant resides" and "residency" includes "any

judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ." 28 U.S.C. §§ 1391(b)(1), (c)(2). For reasons stated in Section I, Max Minds has sufficient minimum contacts with the Commonwealth of Virginia and this district to subject it to this Court's jurisdiction, and therefore venue is proper. *See Newbauer v. Jackson Hewitt Tax Serv.,* 2019 U.S. Dist. LEXIS 53826, at *18-21 (E.D. Va. March 28, 2019) (finding that defendant TSA "resides" in Virginia for purposes of § 1391(b)(1) because it had sufficient minimum contacts to establish personal jurisdiction).

Second, and notwithstanding the suitability of this venue based upon the Court's personal jurisdiction over Max Minds, venue is proper in this Court because a substantial part of the events giving rise to TEG's claim arose here. *See* 28 U.S.C. § 1391(b)(2). A review of "the entire sequence of events underlying [TEG's] claim" support this result. *Mitrano,* 377 F.3d at 405.

In reviewing the "sequence of events underlying the claim," this Court considers both the plaintiff's and defendant's connection to the forum. For example, in *JTH Tax, LLC v. Younan,* this Court found this venue to be proper when the defendant's contracts became effective upon the plaintiff's acceptance in this district, the defendant made payments to the plaintiff in this district, and the defendant communicated with the plaintiff through its headquarters in this district. 2023 U.S. Dist. LEXIS 155639, *4 (E.D. Va. Sept. 1, 2023); *see also T. & B. Equip. Co. v. RI, Inc.* 2015 U.S. Dist. LEXIS 111869 (E.D. Va. Aug. 24, 2015) (finding venue was appropriate when the defendant "directed letters, emails and telephone calls to Plaintiff's office" in Virginia). Of course, TEG and Max Minds also negotiated, accepted, and signed the NDA and JVA in Virginia, and communications exchanged between the parties came through TEG's offices in Virginia. *See LIOBmedia, LLC v. Dataflow/Alaska, Inc.,* 2007 U.S. Dist. LEXIS 56254, at *8 (E.D. Va. 2007) (holding that venue was proper when "[t]he contract at issue -- the Teaming Agreement -- was

largely negotiated and entered into by the parties in this District."); *Columbia Gas Transmission v. Elam Util. Co.*, 2009 U.S. Dist. LEXIS 146053, at *10 (E.D. Va. 2009) (holding that venue was proper when "[Defendant] negotiated the Second Settlement Agreement with Columbia Gas personnel located in Fairfax, Virginia. [] As this court presides over the judicial district encompassing Fairfax, Virginia, venue is proper in this court."). More so, Max Minds' numerous visits to Virginia are alone a sufficient basis for venue in this Court, including the meeting in Chantilly, Virginia, whereby the parties outlined the terms and conditions of their partnership. *See Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. Sept. 23, 2004) (citing *Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000) (noting that the nonresident defendant employee's business trips to the forum "support the district court's exercise of personal jurisdiction … [and] provide a basis for venue [in the forum]")).

Max Minds' Motion addresses venue, and subsections (b)(1) and (b)(2) of 28 U.S.C. § 1391, in a cursory fashion and puts forth unsupported conclusions, such as, "MAX does not 'reside' in Virginia for venue purposes because MAX is not subject to personal jurisdiction in Virginia" and "it is clear that a substantial part of the alleged events or omissions giving rise to TEG's claims occurred at MAX's place of business." (*See* Mot. to Dismiss at 11, Dkt. No. 13.) Max Minds' position is circular. Notwithstanding Max Minds' faulty reasoning, TEG agrees that should the Court find that Max Minds is subject to personal jurisdiction in Virginia, that venue is proper as a place where Max Minds "resides."

Still, Max Minds' Motion fails to address TEG's *prima facie* allegations relating to the substantial connections between the parties' dispute and this venue, including, *inter alia*, Max Minds' repeated visits and solicitations in Virginia; the formation of the JVA in Virginia; and TEG's domicile in Virginia. Read as a whole, Max Minds' argument focuses on Max Minds' own

actions in an attempt escape this Court's jurisdiction, but "courts in the Fourth Circuit have found that venue was proper in a particular district by focusing on the acts or omissions of the plaintiff" (*see Wachovia Bank v. Hudec*, 2008 U.S. Dist. LEXIS 134443, at *11 (E.D. Va. July 28, 2008)), and where a plaintiff sustains its harm is a necessary consideration. *Williams v. Microbilt Corp.*, 2019 U.S. Dist. LEXIS 227601, at *64-65 (E.D. Va. Sept. 23, 2019) (collecting cases).

In sum, the sequence of events underlying TEG's claim signals that this is a proper venue for the dispute between the parties. The allegation that another district court may also be a proper venue does not defeat this Court's jurisdiction or otherwise mean that venue is inappropriate here. *See Mitrano*, 377 F.3d at 405; *Walker*, 2023 U.S. Dist. LEXIS at *14. Rather, Rule 12(b)(3) only permits dismissal when the venue is plainly wrong or improper, and Max Minds has failed to satisfy such a burden.

### III.   THIS COURT SHOULD NOT TRANSFER THE MATTER TO INDIANA.

Transferring this matter to Indiana pursuant to 28 U.S.C. § 1404(a) is inappropriate because (1) an Indiana district court does not have personal jurisdiction over TEG; and (2) the interests of justice support litigating this case in TEG's chosen forum. Max Minds' reliance upon purported forum selection clauses in contracts upon which TEG has not sued upon is misplaced.

When considering whether to transfer venue, the first inquiry is whether the claims might have been brought in the transferee forum, and the movant must establish that the transferee district has jurisdiction over the parties. *See Woie v. Blue-Grace Logistics LLC*, 2023 U.S. Dist. LEXIS 20008, at *8 (E.D. Va. Feb. 6, 2023). TEG's claims relate to Max Minds' breaches of the NDA and JVA, both of which were negotiated and signed by TEG (and Max Minds) in Virginia, TEG's performance occurred in Virginia, and relate to services and goods provided in Virginia. TEG does not conduct any business in Indiana nor has it purposely availed itself of Indiana. To be sure, TEG

17

lacks sufficient "minimum contacts" with Indiana to suggest that it "should reasonably anticipate being haled into court there." *Richardson RFPD, Inc. v. Nexus Techs., Inc.*, 2021 U.S. Dist. LEXIS 178565 (N.D. Ill. Sept. 20, 2021). Indiana courts have no personal jurisdiction over TEG, particularly as it relates to the JVA or NDA – and Max Minds' Motion does not suggest otherwise – and for this reason alone, transfer is improper.

Second, the balance of § 1404(a) convenience and justice factors weigh in favor of denying Max Minds' request for transfer. The Court may consider the plaintiff's choice of venue, convenience to the parties and witnesses, and the interests of justice. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. Apr. 2, 2007). "The initial choice of forum . . . is a privilege given to the plaintiff . . . [and] [t]o overcome that privilege, a movant bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer if sought." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. Apr. 2, 2007) (cleaned up) (emphasis in original). TEG elected to file this lawsuit in this Court because of its presence in this district, the location of employees and witnesses, and the substantial series of events stated herein regarding the JVA and allegations in the Complaint. *See Woie v. Blue-Grace Logistics LLC,* 2023 U.S. Dist. LEXIS 20008, at *12 (E.D. Va. Feb. 6, 2023) ("[T]here is an interest in having 'local controversies' decided at home."). Indeed, TEG's "choice of venue is entitled to substantial weight." *Id.* On the contrary, Max Minds' status as a foreign corporation "is not a factor that this court considers in a transfer analysis" for "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Id.* at 738; *see also Prod. Group Int'l v. Goldman,* 337 F. Supp. 2d 788, 799 (E.D. Va. Sept. 23, 2004) ("Thus, a transfer would merely 'shift the balance of inconvenience' in defendant's favor . . . In such circumstances, transfer is not warranted.") Whether or not Max Minds decides to file an

independent action in Indiana, based upon separate and distinct documents from the NDA and JVA in which TEG's premises this case, does not weigh in favor of transfer.[1] In sum, factors relating to convenience and the interests of justice weigh in favor of denying Max Minds' Motion, and Max Minds does not meet its burden to prove otherwise.

Facing the inevitable, Max Minds seeks to invoke a purported forum selection clause from ostensible contracts that are unrelated to the allegations in the Complaint. Specifically, Max Minds refers to the EULA and the SCLA, neither of which was implicated by TEG's Complaint. Indeed, TEG's claims are brought under the JVA and the NDA, which do not have a forum selection clause in favor of Indiana. Thus, Max Minds' reliance on these unrelated and irrelevant documents are misplaced. Max Minds' argument has been considered and denied by this Court previously. *See LIOBmedia, LLC v. Dataflow/Alaska, Inc.,* 2007 U.S. Dist. LEXIS 56254 (E.D. Va. July 16, 2007). In *LIOBmedia,* the plaintiff brought an action against the defendant based upon a teaming agreement between the parties – the teaming agreement did not contain a forum selection clause. *Id.* at \*2. The plaintiff filed suit in Virginia, and the defendant filed a motion to transfer the action to Alaksa pursuant to § 1404(a) and based upon a forum selection clause founds in the parties' non-disclosure agreement. *Id.* at \*3-5. The defendant argued that the forum selection clause, which was "incorporated by reference" into the teaming agreement but was not the document in which the plaintiff sued upon, required adjudication in Alaska. *Id.* at \*3-4. In denying the defendant's motion to transfer, this Court held that had a breach of the non-disclosure agreement been alleged,

---

[1] In the event Max Minds actually files its "draft complaint" attached as Exhibit D to its Motion, such an action would likely be subject to transfer back to this Court pursuant to the First-To-File Rule, particularly considering that Max Minds' draft complaint specifically relies upon the JVA. *See generally Gonzalez v. Homefix Custom Remodeling, Corp.,* 2023 U.S. Dist. LEXIS 73917 (E.D. Va. Apr. 26, 2023).

then the NDA's forum selection clause may have applied, but "no such claim exists and therefore [the forum selection clause] of the Non-Disclosure Agreement is inapplicable." *Id.* at *7.

Here, Max Minds puts forth the exact argument that this Court rejected in *LIOBmedia* by suggesting that forum selection clauses found in the EULA or SCLA should control TEG's claims brought pursuant to the JVA or NDA. What is more is that in *LIOBmedia*, the teaming agreement even incorporated by reference the non-disclosure agreement's terms, and in the present case, the JVA/NDA on one hand, and the EULA/SCLA on the other, are entirely separate and do not incorporate each other's terms, at all. Thus, Max Minds' argument in this regard should be rejected.

Further, and equally important, the SCLA has *no bearing on this dispute*. Indeed, TEG and Max Minds simply executed the SCLA as a method for TEG to install Haptic Federal on a United States government platform. (Ex. 1, ¶ 13.) The SCLA was executed on March 30, 2021, *in furtherance of the JVA*.

Ex. A to the SCLA states that the "purpose of the [SCLA] is to enable [TEG] to establish a DevSecOps environment at the customer site that demonstrates the ability to provide a security-first continuous software development lifecycle and to demonstrate a process that bridges the gap between on-site and off-site software development teams, while meeting the stringent requirements set by the customer." (*Id.*) Further, Ex. A states that "Fees [are] waived until July 1, 2021. (*Id.*, ¶ 14.) If [the SCLA] remains in-effect beyond that date, the [parties] agree to either (a) establish an ongoing fee structure and amend this agreement or (b) terminate this agreement." (*Id.*).

The government quickly rescinded its offer to install the software and establish a DevSecOps environment and the SCLA became useless as its purpose had been extinguished. (*Id.* ¶ 15.) Removing any doubt as to relevance of the SCLA, Max Minds stated, in writing on August 25, 2023, that the SCLA was "terminated" because it "had already expired or terminated since the

20

Parties did not establish an ongoing fee structure." (*Id.*) The SCLA terminated, according to Max Minds, sometime before it issued its written notice. (*Id.*)

In short, the forum selection clause in the SCLA, which does not govern this dispute, and which has been terminated in any event, has no relevance or application to the instant matter or bearing on the Motion.

Lastly, Max Minds' suggestion that the matter should be transferred because Indiana law may apply to some unstated claims that may be raised in a yet-to-be-filed lawsuit against TEG is unpersuasive. Indeed, the judges on this Court are well-suited to apply another jurisdiction's law if and when appropriate. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988); *see also LIOBmedia, LLC*, 2007 U.S. Dist. LEXIS 56254, at *9 ("The fact that [Max Minds] alleges that [Indiana] law may apply is not enough to justify transfer of venue," as "[t]his Court is well suited to apply federal contract law and [Indiana] law if necessary and venue should remain in this Court.").

The Motion, in all respects, should be denied.

## Conclusion

For the foregoing reasons, and those articulated at any oral argument on this matter, TEG respectfully requests that the Motion be denied and that TEG be awarded any and all further relief as this cause may require or that this Honorable Court deems just and proper.

Respectfully submitted,


*/s/ Richard D. Kelley*
Richard D. Kelley, Esq., VSB No. 44228
Raighne C. Delaney, Esq., VSB No. 38787
Stephen D. Caruso, Esq., VSB No. 87376
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
(703) 525-4000
(703) 525-2207 (Fax)
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
*Counsel for Triangle Experience Group, Inc.*

## Certificate of Service

I hereby certify that on this 18th day of March 2024, the foregoing Opposition to the Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing, and a copy of the filing, to all authorized users, including counsel of record in this matter.

*/s/ Richard D. Kelley*
Richard D. Kelley, Esq., VSB No. 44228
Raighne C. Delaney, Esq., VSB No. 38787
Stephen D. Caruso, Esq., VSB No. 87376
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
(703) 525-4000
(703) 525-2207 (Fax)
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
*Counsel for Triangle Experience Group, Inc.*