# EXHIBIT 1

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| TRIANGLE EXPERIENCE GROUP, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MAX MINDS, LLC, : <br> : <br> Defendant. : | Case Number 1:23-cv-01797-MSN-LRV |

**DECLARATION OF ROBERT E. CLARE, JR. IN SUPPORT OF PLAINTIFF
TRIANGLE EXPERIENCE GROUP, INC.'S OPPOSITION TO THE
MOTION TO DISMISS, OR ALTERNATIVELY,
TO TRANSFER VENUE FILED BY DEFENDANT MAX MINDS, LLC**

I, Robert E. Clare, Jr., do hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am over the age of eighteen (18) and am competent to testify to the matters set forth in this declaration. Unless otherwise stated herein, the statements contained in this declaration are from my own personal knowledge. I submit this declaration in support of Plaintiff Triangle Experience Group, Inc.'s ("TEG") Opposition to the Motion to Dismiss, or Alternatively, to Transfer Venue filed by Defendant Max Minds, LLC ("Max Minds") in connection with the above captioned matter.

2. I am the Chief Executive Officer of TEG.

3. TEG is a Virginia corporation and, on or about March 11, 2015, was organized under the laws of the Commonwealth of Virginia. TEG maintains its principal office in Ashland, Virginia.

4. Beginning in 2017, I participated in a series of conversations with Mr. Fischer while he was employed by Prysm in Reston, Virginia regarding a potential business venture involving Mr. Fischer and TEG, whereby Mr. Fischer would serve in a software developer role and TEG

would be involved with client development of the software as well as market and sell products to the federal government. At this time, Mr. Fischer knew of and expressed his admiration for TEG's technology, capabilities and extensive contacts and experience within the federal government, especially within the Department of Defense. Although Mr. Fischer expressed a desire to start this business venture with TEG right away, he could not do so because his employment agreement with Prysm contained a noncompete agreement. However, Mr. Fischer continued to have technical calls with Kevin Mullican, TEG's CTO.

5. The foregoing notwithstanding, Mr. Fischer continued to stay in touch with TEG and, on July 2, 2019, after his non-compete agreement with Prysm expired, Mr. Fischer contacted me stating that he would "love" to partner with TEG. By this point, Mr. Fischer had formed his own company – Max Minds.

6. In furtherance of this discussion, on July 17, 2019, TEG and Max Minds executed a Mutual Nondisclosure Agreement ("NDA") so that TEG and Max Minds could freely exchange proprietary information to continue to develop a potential partnership. The NDA was negotiated and signed in Virginia.

7. Shortly after Max Minds signed the NDA, and in furtherance of the proposed joint venture, Max Minds traveled to TEG's office space in Suffolk, Virginia, whereby TEG further demonstrated its products and capabilities to Max Minds.

8. Over the next several months, from July 2019 through November 2019, Mr. Fischer and Max Minds corresponded with me and my company about the logistics and next steps for the joint venture partnership.

9. On November 5, 2019, and in furtherance of the NDA that Mr. Fischer signed on behalf of Max Minds to continue the negotiation of the joint venture with TEG, Mr. Fischer, on

behalf of Max Minds, attended a meeting with TEG in Chantilly, Virginia. The purpose of this meeting was to develop and formalize the parameters of the partnership between Max Minds and TEG. During this meeting, the parties formed the general terms of the partnership: Max Minds would help develop software (Haptic Federal) for TEG to exclusively market and sell to federal government customers, and the parties would share in the revenue 50/50 as well as co-own the technology created pursuant to the partnership.

10. On January 15, 2020, following the negotiations regarding the JVA, Mr. Fischer e-mailed me stating that he was "tentatively planning to fly into Richmond" to "install Haptic on TEG's Data Center" located in Virginia. Mr. Fischer explained that Max Minds would then perform "testing, training and discuss use cases in depth." That training and those discussions would and did occur in Virginia.

11. In discussion the January 15, 2020, launch meeting for the joint venture, Mr. Fischer asked TEG who would have responsibility for the travel expenses. Mr. Fischer stated that "[a]s far as I am concerned, it is the cost of doing business and so I am ok with MAX covering this trip if necessary . . . however, Rob suggested that any travel related to TEG's current contract could be covered . . . so I thought I would ask." TEG, wishing to start the partnership off on the right foot, agreed to reimburse the travel expenses. Max Minds then traveled to Virginia and installed software in the TEG Data Center (known as the "Pixel Factory"). The installation was performed by Max Minds' employee, Robert Schuster.

12. On January 23, 2020, Mr. Fischer came to my house in Ashland, Virginia. During Mr. Fischer's visit to my house, Mr. Fischer and I signed the JVA.

13. Over the course of the next few years, TEG paid Max Minds approximately $5,000,000 under the JVA – with every dollar coming from TEG's bank account in Virginia.

14. On or about March 30, 2021, TEG and Max Minds executed a Source Code License Agreement ("SCLA"). The parties executed the SCLA to facilitate TEG's installation of software on a federal government server. Exhibit A to the SCLA specifically states that the "purpose of the [SCLA] is to enable [TEG] to establish a DevSecOps environment at the customer site that demonstrates the ability to provide a security-first continuous software development lifecycle and to demonstrate a process that bridges the gap between on-site and off-site software development teams, while meeting the stringent requirements set by the customer."

15. In plain English, for the layperson, in order to further develop the software for the federal government, the federal government required TEG to install the Federal Haptic software in a secure federal government location in a classified federal government facility. Because the federal government had not purchased the software, however, and was just allowing for faster development times and faster cyber security scanning, the federal government refused to execute any license agreement with Max Minds or the Joint Venture, much less pay for any fees related to the SCLA. In an effort to further its marketing of the Joint Venture's software, TEG executed the SCLA on the federal government's behalf. As noted above, however, this agreement was limited by Exhibit A to apply solely to the proposed federal government secure demo lab. It was a one-time-only, very limited circumstance.

16. Furthermore, while TEG did attempt to arrange for the foregoing installation of the software, because of the inaction of Max Minds, TEG was unable to do so. Indeed, TEG never received the source code from Max Minds for that effort, obviously never installed the software at the federal government site, did not pay Max Minds any additional funds under the SCLA, and no payment was ever made or even required in the document. Consistent with the foregoing, Exhibit A of the SCLA states that "Fees [are] waived until July 1, 2021. If [the SCLA] remains in-effect

4

beyond that date, the [parties] agree to either (a) establish an ongoing fee structure and amend this agreement or (b) terminate this agreement."

17. The government rescinded its offer to install the software and establish a DevSecOps environment and the SCLA became useless as its purpose had been extinguished. Max Minds stated, in writing on August 25, 2023, that the SCLA was "terminated" effective when the government rescinded its offer because it "had already expired or terminated since the Parties did not establish an ongoing fee structure." The SCLA terminated, according to Max Minds, sometime before it issued its written notice.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated March 18, 2024

                                                              */s/ Robert E. Clare, Jr.*
                                                              Robert E. Clare, Jr.
                                                              Chief Executive Officer
                                                              Triangle Experience Group, Inc.